IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

AMEER MUHAMMAD,                    )
                                    )
        Plaintiff,                  )
                                    )   Case No. 16 C 2280
    v.                              )
                                    )   Judge Manish S. Shah
THOMAS DART, et al.,                )
                                    )
        Defendants.                 )

**MEMORANDUM OPINION AND ORDER**

Plaintiff Ameer Muhammad attempted to commit suicide at the Cook County Jail. After the attempt, he was handcuffed and moved. He brought this action *pro se* under 42 U.S.C. § 1983 to seek redress for the way he was handcuffed and moved. The defendants—the correctional officer who handcuffed Muhammad, the personnel who initially responded to his need for medical assistance and who purportedly ignored his complaints about the painful handcuffs, and Sheriff Dart—move for summary judgment. The motion is denied.

**I.   Legal Standard**

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of proving the absence of a disputed issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317,

323 (1986); *Carmichael v. Vill. of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010). If the moving party satisfies its burden, the non-moving party must "show that there is evidence upon which a jury reasonably could find for the plaintiff." *Carmichael*, 605 F.3d at 460 (quoting *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008)). If the moving party does not satisfy its burden, the burden does not shift to the non-moving party, and summary judgment must be denied. *See id.*

Local Rule 56.1 governs the procedures for filing and responding to motions for summary judgment in this Court. Local Rule 56.1(a) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue" for trial. *See Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004). Each statement of fact must be supported by "specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts." N.D. Ill. R. 56.1(a). The Court may disregard any fact that is not properly supported. *Morris v. Curves Int'l, Inc.*, No. 17 CV 3087, 2019 WL 918481, at *1 (N.D. Ill. Feb. 25, 2019) (citing *Bryant v. Bd. of Educ., Dist. 228,* 347 F.App'x 250, 253 (7th Cir. 2009). The Court also is entitled to require strict compliance with Local Rule 56.1. *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009).

## II.  Discussion

Muhammad's claims in this case involve four issues: (1) whether defendant Stiemen's application of handcuffs, and failure to loosen the handcuffs after plaintiff

complained about them, was reasonable; (2) whether the medical defendants failed to intervene to loosen the handcuffs; (3) whether the medical defendants' conduct while attempting to move Muhammad was reasonable; and (4) whether a jail policy contributed to Muhammad's injuries. Dkt. 73. Because Muhammad was a pretrial detainee at the time of the events underlying this lawsuit, defendants' conduct must have been objectively reasonable to avoid running afoul of the Constitution. *See Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015) (force); *Miranda v. County of Lake*, 900 F.3d 335, 350–54 (7th Cir. 2018) (medical care). For his part, Muhammad has consistently identified facts that call into question the reasonableness of defendants' conduct. *See, e.g.,* Dkt. 74; Dkt. 106 at 11–13, Muhammad Dep. 15:13–20:22.

The facts presented by defendants in support of summary judgment do not adequately address the events described by Muhammad. Defendants therefore failed to carry their burden at summary judgment.

### A. Defendants Improperly Rely on Hearsay to Establish Their Version of Events.

Defendants rely almost entirely on reports prepared by jail officials to establish their version of what occurred on September 23, 2015. While this approach does not necessarily doom a motion for summary judgment, *see Wheatley v. Factory Card & Party Outlet*, 826 F.3d 412, 420 (7th Cir. 2016) (explaining that party's evidence "need not be admissible in form, but must be admissible in content"), the documents on which defendants rely do not show what each defendant did as the events underlying

3

this lawsuit unfolded, nor do the documents contain enough detail to establish the absence of a dispute concerning the facts at the heart of Muhammad's claims.

For example, Muhammad contends that, after he ran head-first into a steel door and lost consciousness, medical personnel arrived and dropped him several times as they tried to put him into a wheelchair. *See* Muhammad Dep. 15:13–20:22. He also says that defendants failed to properly secure him to a "stretcher board" and, as a result, he fell off the board several times as defendant Hartley dragged him along the floor on the board. *Id.*

Defendants attempt to establish the reasonableness of their conduct by pointing to a report prepared by an unidentified individual, which states that Muhammed "refused to sit in wheelchair" and that the "flatboard" was malfunctioning. *See* Dkt. 106 ¶ 8 (citing Ex. B, Incident Report). It is unclear, however, whether the person who prepared the report was present during the events of September 23, 2015, and thus whether the testimony would be admissible—it is certainly not under oath and not admissible now. *See* Fed. R. Civ. P. 56(c)(4). The report also does not show what each defendant knew about any risk to Muhammad's safety, *i.e.,* the risk of additional head trauma as Muhammad fell off the flatboard or the risk of injury to Muhammad's wrists, which he says were handcuffed behind his back while he was laying on them; what steps defendants took to place Muhammad in the wheelchair or to secure him to the flatboard; what they did in response to any

4

problems they encountered; or what steps they took to address any risks to Muhammad's safety as they grappled with the problems they encountered.

Instead of providing details concerning defendants' conduct, the report sets forth a sequence of events supported largely by vague conclusory statements. Specifically, as the report relates to defendants' use of the wheelchair and flatboard, it states:

> AT 1335 HRS MEDICAL STAFF NURSE HARTELY, LOCKE, JEFFERSON AND PARAMEDIC HAYES ON TIER WITH WHEELCHAIR. INMATE REFUSED TO SIT IN WHEELCHAIR. 1340 HRS MEDICAL STAFF LEFT TIER TO REACCESS [sic] SITUATION. AT 1349 HRS MEDICAL STAFF RETURNED TO TIER WITH A FLATBOARD. MEDICAL STAFF WAS ABLE TO PULL INMATE OFF TIER ON BAORD TO INTERLOCK.

Dkt. 106 at 16, Ex. B. An "Administrative Assessment" at the bottom of the report also notes, "[t]he gurney that medical responded with was not working properly." *Id.* But statements such as Muhammad "refused" to sit in the wheelchair or "the gurney . . . was not working properly" are not supported by an adequate foundation of personal knowledge—they are not admissible. On top of that, these facts do not foreclose a finding that defendants did not reasonably respond to Muhammad's purported "refus[al]" to sit in the wheelchair or that defendants' attempt to move Muhammad on a malfunctioning gurney was unreasonable. *See, e.g., Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157-58 (1970) (concluding that movant did not carry its burden when materials submitted in support of summary judgment contained "unexplained gaps" in facts necessary to resolve critical elements of non-movant's

5

claim).

Similarly, defendants may not rely on a memorandum prepared by Superintendent Walsh to establish what occurred on September 23, 2015, because it does not appear that Walsh has personal knowledge of the events. *See* Dkt. 106 at 17, Ex. C. Instead, the memorandum prepared by Walsh concerns, in large part, his interpretation of a video of the complained-of events and his conclusion that Muhammad's grievance about the events was meritless. *Id.* Defendants do not explain why they believe Walsh's conclusions are relevant to this case, and the Court discerns no basis for admission of Walsh's conclusions at trial. *See Ferguson v. Menard Inc.*, No. 4:16-CV-10JVB, 2017 WL 4287872, at *2 (N.D. Ind. Sept. 27, 2017) (excluding expert's opinion about events depicted in surveillance video because expert "is no better qualified to say what the video shows than a juror would be"); *see also Haywood v. Lucent Tech., Inc.*, 323 F.3d 524, 533 (7th Cir. 2003) (explaining that inadmissible hearsay is not permitted as evidence in support of summary judgment motion).

### B. Defendants Did Not Produce A Copy of The Video Described in Superintendent Walsh's Memorandum.

On December 7, 2018, this Court ordered defendants to:

> produce to Plaintiff by December 17, 2018, (1) a copy of his medical records concerning his medical treatment on September 23, 2015, and any subsequent medical treatment for injuries stemming from the complained-of handcuffing; and (2) a copy of the video recording referenced in Exhibit C to Defendants' Local Rule 56.1 Statement of Material Facts in a format viewable by Plaintiff. Defendants also shall,

> concurrent with their production to Plaintiff, supplement the record with a copy of the video recording in a format viewable by the Court.

Dkt. 111. As of December 26, 2018, Muhammad had not received a copy of the medical records or the video. Dkt. 112 at 8. The Court also did not receive a copy of the video. At trial, the jury may be instructed to draw an adverse inference against defendants based on counsel's failure to produce the video as ordered. *See* Seventh Circuit Pattern Jury Instruction § 1.20.

### C. Defendants' Arguments Rely on Facts Not Properly Before the Court.

The method by which defendants chose to support their version of events is not the only problem; they also rely on arguments in their brief for which they provided no factual support. For example, as to Muhammad's claim concerning the handcuffs, defendants argue that no constitutional violation occurs "where handcuffing is temporarily required" or where handcuffing an inmate is necessary "in response to general security concerns." Dkt. 105 at 5. They did not, however, identify facts showing how long Muhammad remained handcuffed or why Stiemen turned Muhammad over onto his handcuffed wrists. Muhammad's claim is, after all, not merely that he was handcuffed to the back, but that the handcuffs were too tight and that he had to lie on his handcuffed wrists for so long that his hands became numb. *See* Muhammad Dep. 22:7–8, 25:10–26:11.

Instead, defendants argue that "Defendant Stiemen's use of force in simply applying the handcuffs to [Muhammad] to restrain him and calm him down was

7

clearly valid, stemming from the advancement of institutional order and security concerns," Dkt. 105 at 6, and that Stiemen is entitled to qualified immunity because his conduct "was objectively and subjectively reasonable in light of the facts and circumstances confronting him," Dkt. 105 at 7. But again, defendants' Rule 56.1 statement does not include facts describing what "security concerns" were presented by a suicidal inmate laying on the ground after having knocked himself unconscious or why it was necessary for Muhammad to lie on his handcuffed wrists for an unspecified period of time. Defendants also do not address Muhammad's claim that the medical defendants ignored his complaints of pain stemming from the handcuffs.

Similar problems exist with defendants' arguments concerning the circumstances surrounding their attempts to move Muhammad. *See* Dkt. 105 at 8–9. For example, defendants contend that Muhammad "refused" to get in the wheelchair and that the gurney was malfunctioning, *see id.*, but the only admissible evidence Defendants cite to support their proposition says no such thing, *see, e.g.,* Dkt. 106 ¶ 7 (citing Muhammad Dep. 15:13–24, 17:1–12). Rather, the testimony—Muhammad's testimony—shows only that defendants arrived with a wheelchair, that defendants "struggled" to pick him up and put him in the wheelchair, and that defendants tried to put him in the wheelchair by grabbing his upper and lower body. Muhammad Dep. 15:13–24, 17:1–12.

That leaves Muhammad's official capacity claim against Sheriff Dart concerning the jail's handcuffing policy. Here, defendants assert, without citation to

8

anything, that Muhammad "failed to identify [the] policies or rules" at issue. *See* Dkt. 105 at 10. But Muhammad *did* identify a policy; he contends that the jail's policy of handcuffing inmates behind their back caused his injuries. *See* Muhammad Dep. 27:12–17. Defendants acknowledge as much in their statement of facts. *See* Dkt. 106 ¶ 11 ("Plaintiff testified that he was handcuffed to the back due to a policy that all maximum-security inmates be handcuffed during emergency situations").

### D. Defendants Mischaracterize Plaintiff's Deposition Testimony.

Finally, defendants mischaracterize Muhammad's deposition testimony. Three paragraphs from defendants' statement of facts are illustrative:

> 5. Plaintiff testified that due to Defendant Stiemen not double locking the handcuffs, when Defendant Stiemen turned Plaintiff on his back the handcuffs tightened. (Ex. A, Muhammad Dep. Tr. 14:23–24; 15:1.)
>
> 6. Plaintiff testified that he did not speak to Defendant Stiemen after he was handcuffed and that Defendant Stiemen was in a different room called a "control bubble." (Ex. A, Muhammad Dep. Tr. 21:18–24; 22:1–2.)
>
> 7. Once Plaintiff was handcuffed Defendants Locke, Jefferson, and Hayes responded to the medical call and entered Division 10 Unit 1-D to assist the Plaintiff after he jumped off the table. Defendant Hayes brought in a wheelchair for Plaintiff. After Plaintiff refused to get into the wheelchair, Defendants Locke, Jefferson, and Hayes struggled to pick Plaintiff up and put him in the wheelchair. Defendant made several attempts to put him in the wheelchair, grabbing his upper and lower body. (Ex. A, Muhammad Dep. Tr. 15:13–24; 17:1–12.)

Conspicuously absent from the sequence is Muhammad's testimony at page 15, lines 2–12, or in other words, the testimony immediately following the testimony

9

defendants relied on to craft the statement in paragraph 5 and just before the testimony relied on to craft the statement in paragraph 7. The omitted testimony is:

> Q. And did you say anything after the officer handcuffed you, Officer Stimen [sic]?
> A. I complained to him about the pain and asked can he loosen the handcuffs.
> Q. Did he respond?
> A. Yes.
> Q. What did he say?
> A. "You should have thought about that before you jumped."

Muhammed Dep. 15:2–10. Given this testimony, defendants' assertion that "Plaintiff testified that he did not speak to Defendant Stiemen after he was handcuffed" is just not true.

The purpose of Local Rule 56.1 "is to make the summary judgment process less burdensome on district courts by requiring the parties to nail down the relevant facts and the way they propose to support them." *Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 398 (7th Cir. 2012). Defendants failed to do so. As a result, they are not entitled to summary judgment.

## IV. Conclusion

Defendants' motion for summary judgment [104] is denied. A status hearing is set for March 27, 2019, at 9:30 a.m. Counsel for the defendants should be prepared to address the failure to comply with the Court's December 7, 2018 order.

ENTER:

Date: March 8, 2019

Manish S. Shah, U.S. District Judge